No. 16-1693

# In the
# United States Court of Appeals
## for the Seventh Circuit

SHERRY ANICICH, Independent Administrator of the Estate of
ALISHA BROMFIELD, Deceased, and as Special Administrator of the
Estate of BABY AVA LUCILLE,

*Plaintiff-Appellant,*

v.

HOME DEPOT U.S.A., INCORPORATED, GRAND SERVICE, LLC,
and GRAND FLOWER GROWERS, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:14-cv-07125.
The Honorable **Jorge L. Alonso**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES GRAND SERVICE, LLC and GRAND FLOWER GROWERS, INCORPORATED

C. WILLIAM BUSSE, JR.
SCOTT W. BERENDS
BUSSE, BUSSE & GRASSÉ, P.C.
20 North Wacker Drive
Suite 3518
Chicago, Illinois 60606
(312) 750-1212

*Counsel for Defendants-Appellees,*
*Grand Service, LLC and Grand Flower Growers, Incorporated*

**OAR ARGUMENT REQUESTED**

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 16-1693

Short Caption: Sherry Anicich v. Home Depot, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Grand Flower Growers, Inc.

Grand Service, LLC

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Busse, Busse & Grasse, PC

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

no parent corporations

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

no publicly held company owns 10% or more of either Grand Service or Grand Flower Growers

---

Attorney's Signature: s/ C. William Busse Date: April 13, 2016

Attorney's Printed Name: C. William Busse

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** X **No** ____

Address: 20 N. Wacker, Suite 3518
Chicago, Illinois 60606

Phone Number: 312-750-1212 Fax Number: 312-750-1211

E-Mail Address: cwbusse@bussepc.com; service@bussepc.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 16-1693

Short Caption: Sherry Anicich v. Home Depot, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Grand Flower Growers, Inc.

Grand Service, LLC

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Busse, Busse & Grasse, PC

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

no parent corporations

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

no publicly held company owns 10% or more of either Grand Service or Grand Flower Growers

---

Attorney's Signature: s/ Scott Berends Date: April 13, 2016

Attorney's Printed Name: Scott Berends

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** X **No** ____

Address: 20 N. Wacker, Suite 3518
Chicago, Illinois 60606

Phone Number: 312-750-1212 Fax Number: 312-750-1211

E-Mail Address: sberends@bussepc.com; service@bussepc.com

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS .......... i

TABLE OF CONTENTS .......... iii

TABLE OF AUTHORITIES .......... v

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE CASE .......... 1

Statement of the Facts .......... 1

Procedural History .......... 6

SUMMARY OF THE ARGUMENT .......... 8

STANDARD OF REVIEW .......... 8

ARGUMENT .......... 9

I. Standard for Motion to Dismiss .......... 9

II. Anicich's Discussion of the Federal Pleading Standards is a Red Herring .......... 10

III. Judge Alonso Correctly Held that the Amended Complaint Failed to State a Cause Of Action for Negligence .......... 11

a. The Grand Defendants did not Owe A Duty of Care to Bromfield .......... 11

b. The Grand Defendants did not Stand In One of the Recognized Special Relationships With Bromfield .......... 12

c. Neither Cooper's Attack nor Bromfield's Murder were Reasonably Foreseeable .......... 12

IV. The Restatement (Second) of Agency did not Impose a Duty to Protect Bromfield .......... 15

a. Even if Cooper's Attack was Reasonably Foreseeable, the Burden of Guarding Against The Harm is so Great that no Duty of Care Arose .......... 16

V. The District Court did not Decide an Issue Of Proximate Cause, its Decision was Limited To the Duty Analysis. The "Clocking In Scheme" Was Considered and Addressed ........ 19

VI. The Amended Complaint Fails to State A Cause of Action for Negligent Supervision ........ 21

VII. The Court Correctly Dismissed the Survival Claim ........ 23

VIII. The District Court Correctly Dismissed the Wrongful Death Claim ........ 23

IX. The Grand Defendants did not Owe a Duty Of Care to Baby Ava Lucille ........ 24

X. The Court Properly Disallowed Discovery While the Motion to Dismiss was Pending ........ 24

CONCLUSION ........ 24

CERTIFICATE OF COMPLIANCE ........ 26

CERTIFICATE OF SERVICE ........ 27

**TABLE OF AUTHORITIES**

Cases

*Cobb v. Martin IGA & Frozen Food Center, Inc.*,
337 Ill. App. 3d 306 (5th Dist. 2003) .................................................... 14

*Cretton v. Protestant Memorial Medical*,
371 Ill. App. 3d 841 (5th Dist. 2007) .................................................... 23

*Deitchman v. E.R. Squibb & Sons, Inc.*
740 F.2d 556 (7th Cir. 1984) .................................................................... 8

*Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*
593 F.3d 507 (7th Cir. 2010) .................................................................. 11

*Ellig v. Delnor Community Hosp.*,
237 Ill. App. 3d 396 (2d Dist. 1992) .................................................... 23

*Estate of Johnson v. Condell Memorial Hosp.*
119 Ill. 2d 496 (1988) ........................................................................... 12

*Ernst v. Parkshore Club Apartments Ltd. Partnership*
863 F. Supp. 651 (N.D. Ill. 1994) ......................................................... 21

*Fancil v. Q.S.E. Foods, Inc.*
60 Ill. 2d 552 (1975) ............................................................................. 12

*FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*
498 U.S. 269 (1991) ................................................................................ 1

*First Springfield Bank & Trust v. Galman*,
188 Ill. 2d 252 (1999) ........................................................................... 21

*Gustafson v. Mathews*,
441 N.E.2d 388 (Ill. App. Ct. 1982) ..................................................... 16

*Hallinan v. Fraternal Order of Police Lodge No. 7*
570 F.3d 811 (7th Cir. 2009) .................................................................... 9

*Hills v. Bridgeview Little League Ass'n*,
195 Ill. 2d 210 (2000) ........................................................................... 15

*Iseberg v. Gross*,
879 N.E.2d 278 (Ill. 2007) .................................................................... 10

*Kaplan v. Zenner*
956 F.2d 149 (7th Cir. 1990)........................................ 1

*Kohn v. Laidlaw Transit, Inc.*
347 Ill. App. 3d 746 (5th Dist. 2004)........................................ 11, 16

*Kyle v. Morton High School*
144 F.3d 448 (7th Cir. 1998)........................................ 9

*Little Co. of Mary Hosp. v. Sebelius*
587 F.3d 849 (7th Cir. 2009)........................................ 8

*Marshall v. Burger King Corp.*,
222 Ill. 2d 422 (2006)........................................ 12

*Miller v. American Infertility Group of Illinois, S.C.*,
386 Ill. App. 3d 141 (1st Dist. 2008)........................................ 23

*Morgan v. Dalton Management Company*,
117 Ill. App. 3d 815 (1st Dist. 1983)........................................ 14

*Myers v. Heritage Enterprise*,
332 Ill. App. 3d 514 (4th Dist. 2002)........................................ 23

*Platson v. NSM America, Inc.*,
322 Ill. App. 3d 138 (2d Dist. 2001)........................................ 22

*Rapier v. Ford Motor Co.*,
49 F. Supp. 2d 1078 (N.D. Ill. 1999)........................................ 22

*Reynolds v. CB Sports Bar, Inc.*
623 F.3d 1143 (7th Cir. 2010)........................................ 11, 17

*Simpkins v. CSX Transp., Inc.*
965 N.E.2d 1092 (Ill. 2012)........................................ 10, 11

*Slager v. Commonwealth Edison Co.*,
595 N.E.2d 1097 (Ill. App. Ct. 1st Dist. 1991)........................................ 13

*Strasburg v. State Bar of Wisconsin*
1 F.3d 468 (7th Cir. 1993)........................................ 1

*Van Horne v. Muller*,
185 Ill. 2d 299 (1998)........................................ 22

*Varelis v. Northwestern Memorial Hosp.*,
167 Ill. 2d 449 (1995) .......... 23

*Washington v. Indiana High School Athletic Ass'n., Inc.*,
181 F.3d 840 (7th Cir. 1999) .......... 24

*Washington v. Sherwin Real Estate, Inc.*
694 F.2d 1081 (7th Cir. 1982) .......... 8

*Watson v. Enterprise Leasing Co.*,
325 Ill. App. 3d 914 (1st Dist. 2001) .......... 20

*Wright v. City of Danville*,
174 Ill. 2d 391 (1996) .......... 15

*Young v. Bryco Arms*,
213 Ill. 2d 433 (2004) .......... 20

*Young v. Verizon's Bell Atlantic Cash Balance Plan*,
498 F. Supp. 2d 1101 (N.D. Ill. 2007) .......... 24

**Statutes**

Restatement (2d) of Agency § 512 .......... 15

Restatement (2d) Torts § 315 (1965) .......... 12

## JURISDICTIONAL STATEMENT

The jurisdictional statement of the appellant is not complete and correct. Anicich's jurisdictional statement notes that she filed her notice of appeal on March 28, 2016 and that the Court entered the final order on April 4, 2016. A notice of appeal must be filed within thirty days after the entry of a judgment. Fed. R. App. P. 4(a)(1) (emphasis added). The thirty-day rule exists to "provide certainty to litigants about when filing requirements for post judgment motions and appeals begin to run." *Strasburg v. State Bar of Wisconsin*, 1 F.3d 468, 470 (7th Cir. 1993). When an order's finality is conditioned on the passage of time or the happening of an event, the judgment becomes final only when the condition is satisfied. *See Kaplan v. Zenner*, 956 F.2d 149, 150 (7th Cir. 1990). Otherwise, a nonfinal decision acts as a final judgment only when the court announces a decision that would be appealable if immediately followed by the entry of a judgment. *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269 (1991). Because the notice of appeal was filed at a time when the District Court's decision was not final, it did not confer jurisdiction on the Court. Because a subsequent notice of appeal was not filed, the Court lacks jurisdiction over the present appeal.

## STATEMENT OF THE CASE

### Statement of the Facts

Anicich's brief greatly overstates what she calls the "relevant facts" and omits salient points on which the Amended Complaint was silent. Because the

Amended Complaint's facts were analyzed by the District Court and found lacking, their analysis here is, likewise, appropriate.

Bromfield alleges that she began working when she was sixteen years old (Dkt.#61 at ¶ 14). Anicich's Complaint alleged that Bromfield was employed by John and Todd Mossel, Grand Flower Growers, Inc., Grand Service, LLC, Vinca Solutions, Inc. and Home Depot USA, Inc. because each and all of them were joint venturers (Dkt.#1 at ¶ 4). Anicich's Amended Complaint alleged that Bromfield was employed only by Grand Service, LLC, Grand Flower Growers, Inc. and Home Depot USA, Inc., once again as joint venturers (Dkt.#61 at ¶ 9). Both the Complaint and Amended Complaint are silent about the scope, both durational and geographic, of the supposed joint venture. The Complaint and Amended Complaint are unclear about how long Bryan Cooper supervised Bromfield but imply that he supervised her from the time her employment began in 2006 until her death in 2012 (Dkt.# 61 at ¶13). Anicich's appeal brief claims that Home Depot was "also in charge of the garden center and overall job site safety for work being performed there" (Appellant's Brief at p. 5) and that "Home Depot was also responsible for overall job site safety of its employees" (Id). Anicich's Amended Complaint is silent as to this claim. It is likewise silent regarding Grand's responsibility for job safety at Home Depot stores.

In 2007, the Home Depot in Joliet, Illinois was run, in part, by a woman named Kelly Elwell (Dkt.#61 at ¶ 17). Elwell was employed solely by Home Depot (Dkt.#61 at ¶ 17). While Cooper was at the Home Depot in Joliet, he had

supervisory authority over a young woman name Jessica Boseo (Dkt.# 61 at 18). Once again, the Amended Complaint is unclear as to whether Boseo was employed by both Grand and Home Depot, just Home Depot or just Grand (Dkt.#61 at ¶ 18). While supervising Jessica, Cooper made inappropriate comments to Jessica which included talking about his penis, introducing Jessica as his girlfriend and physically rubbing himself against Jessica (Dkt.#61 at ¶ 19). The Amended Complaint does not allege that Cooper was physically violent toward Jessica. At an unspecified time, Jessica informed Kelly Elwell that Cooper had made inappropriate comments to her and that he had inappropriately touched her (Dkt.#61 at ¶ 21). There are no allegations that Jessica's complaint was forwarded to the Grand defendants. While Cooper was working at the Joliet Home Depot, he yelled and swore at Jessica (Dkt.#61 at ¶ 22). When Jessica quit working at Home Depot, Cooper swore at her (Dkt.# 61 at ¶ 23). There are no allegations that the Grand defendants were informed about the yelling and swearing. Notwithstanding Anicich's claim that "Cooper's behavior toward Jessica is one example of several other similar circumstances, which were known to Elwell and others at both Grand and Home Depot" (Appellant's Brief at p. 6), the Amended Complaint is silent about any other instances beyond those associated with Bromfield.

At two unspecified times Cooper called Bromfield a bitch "within earshot of other Home Depot customers and employees at Home Depot Joliet" (Dkt.#61 at ¶ 26). Bromfield complained about Cooper to Kelly Elwell (Dkt.#61 at ¶ 27) but there are no allegations that Elwell communicated those complaints to the

Grand defendants. On an unspecified date, Cooper slammed items around the Home Depot Joliet store in a "fit of rage" (Dkt.#61 at ¶ 29). There are no allegations that Cooper was physically violent to any person at Home Depot Joliet.

At an unspecified time at a Home Depot in Shorewood, Cooper denied Bromfield's request for a break when "temperatures exceeded 100 degrees" (Dkt.#61 at ¶ 32). When Bromfield requested lunch breaks with male employees, Cooper denied those requests (Dkt.#61 at ¶ 33). At an unspecified time Cooper called Bromfield a "slut" and a "whore" when she asked him for a day off (Dkt.#61 at ¶ 34). After Bromfield became pregnant, Tina Clem, a manager at the Shorewood Home Depot, witnessed Cooper "stewing angrily in the patio section (Dkt.#61 at ¶ 36). There are no allegations that Cooper was violent toward Bromfield while she was at the Shorewood Home Depot. An unspecified co-employee of Bromfield believed that Cooper's conduct constituted sexual harassment (Dkt.#61 at ¶ 36).

Anicich's Amended Complaint alleges that on unspecified occasions, Bromfield complained to unspecified managers at Grand Flower Growers and Grand Service about Cooper's conduct (Dkt.#61 at ¶ 37). She also complained that Cooper was "open in suggesting an intimate relationship between himself and [Bromfield]" (Dkt.#61 at ¶ 37). On unspecified occasions, Cooper texted and/or called Bromfield about work related matters but then intimidated her into discussing her personal life (Dkt.#61 at ¶ 38). Bromfield complained about that conduct to Grand management (Dkt.#61 at 38). At an unspecified

time, an unspecified individual at Grand advised Bromfield that Grand was aware of Cooper's anger problems (Dkt.#61 at ¶ 39). Those anger problems included "throwing and slamming items in the garden center and Home Depot parking lot while screaming obscenities at Bromfield" (Dkt.#61 at ¶ 39). The Amended Complaint does not specify any other instances of angry behavior. Unspecified individuals at Grand and Home Depot, at unspecified times, arranged to have Bromfield clocked in and out while she was traveling with Cooper for business reasons (Dkt.#61 at ¶ 40). On at least one occasion, one of the business trips was overnight and Cooper and Bromfield slept in the same room (Id).

Anicich further alleges that at an unspecified time, an unspecified individual requested that Cooper take anger management classes (Dkt.#61 ¶ 41). Cooper failed to complete the anger management courses but was not disciplined for that failure (Dkt.#61 at ¶ 43). At unspecified times, Cooper requested that Bromfield accompany him on "day trips" to various Home Depot stores in Cook County (Dkt.#61 ¶ 46).

Finally, the Amended Complaint alleges that on two separate occasions, Cooper asked Bromfield to attend his sister's wedding in Door County, Wisconsin (Dkt.#61 at ¶ 49). Bromfield refused to attend the wedding (Id). At some point prior to August 18, 2012, Cooper advised Bromfield that he would reduce her hours or fire her if she did not attend the wedding (Dkt.#61 at ¶ 50). There is no allegation that Grand was aware of the alleged threat. On August 18, 2012, Bromfield traveled to Wisconsin with Cooper for Cooper's sister's

wedding (Dkt.#61 at ¶ 51). Cooper arranged to have Bromfield clocked in at work on that day (Dkt.#61 at ¶ 52). There is no allegation that anyone at Grand was aware of Cooper's actions. Following the wedding, while Bromfield and Cooper were in Cooper's hotel room, Cooper murdered Bromfield and following her death had sex with her corpse (Dkt.#61 at ¶ 53).

**Procedural History**

Anicich began this lawsuit by suing six defendants (1) Home Depot U.S.A., Inc., the company that owned the stores where Alisha Bromfield worked as a seasonal employee; (2) Vinca Solutions, LLC, an employee staffing company; (3) Grand Flower Growers, Inc., a Michigan company that grows flowers and other plants for sale in Home Depot stores; (4) Grand Service, LLC, a company that stocks and services the flower and plant displays at various Home Depot stores; and (5) John and Todd Mossel, the owners of Grand Flower Growers and Grand Service. Anicich's theory of liability was simple – each of the above individuals and companies was Bromfield's employer and each had a duty to protect Bromfield from Bryan Cooper, Bromfield's co-worker, while they were at a private (non-work) function. Because there was complete diversity between the parties and Anicich was claiming more than $75,000 in damages, the defendants[1] removed the case to the Northern District of Illinois. (Dkt. #1). On October 10, 2014, the Grand Defendants, along with John and Todd Mossel, filed a motion to dismiss pursuant to Federal Rule of Civil Procedure

[1] Anicich's brief claims that the Grand defendants removed the action to the Northern District but the notice of removal was requested by each of the defendants. *See* Dkt. #1.

12(b)(6). (Dkt. #19). Vinca Solutions and Home Depot filed their own motions to dismiss on December 17, 2014 and October 3, 2014 respectively. (Dkt. #38, 14, 16). On June 9, 2015, Judge Alonso granted the defendants' motions to dismiss (Dkt. #60) but gave Anicich leave to amend her complaint if she could do so without violating the strictures of Rule 11. (Id). On June 30, 2015, Anicich filed an amended complaint (Dkt. #61). The Amended Complaint continued to name John and Todd Mossel along with Vinca Solutions even though no relief was sought against any of those defendants (Id). Both the Mossels and Vinca brought their continued inclusion to the Court's attention through motions to dismiss (Dkt. #66, 67). Only after those motions were filed did Anicich dismiss those defendants (Dkt. #72). Along with the Mossels and Vinca, the Grand defendants and Home Depot also moved to dismiss Anicich's amended complaint because that complaint failed to cure the original complaint's deficiencies (Dkt. #67, 69). While the motions to dismiss were being presented, Anicich, through counsel, orally requested leave to conduct discovery with respect to the allegations in her complaint. The oral request was denied (Dkt. #72). Following lengthy briefing, the Court agreed that the amended complaint failed to state a cause of action and dismissed it (Dkt. #79). Though skeptical of Anicich's ability to do so, the Court gave her leave to amend a second time (Id). Anicich declined the opportunity to amend and, instead, filed a notice of appeal on March 28, 2016 (Dkt. #80). On April 4, 2016, after the notice of appeal was filed, the Court entered an Order dismissing the cause of action with prejudice (Dkt. #84).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Anicich's Amended Complaint because the complaint failed to set forth a duty of care owed by the Grand Defendants to either Bromfield or her unborn child. The harm suffered by Bromfield was not reasonably foreseeable and the burden of guarding against that harm would have been incredibly high. Anicich's Amended Complaint failed to set forth the elements of a negligent supervision claim and that unpled count was properly dismissed. The Court properly denied discovery while the motion to dismiss was pending.

## STANDARD OF REVIEW

Anicich properly sets forth the standard of review for a motion to dismiss but she fails to even discuss the standard of review for the other aspect of her appeal, the denial of her request for discovery. District courts have broad discretion in discovery matters and the Court of Appeals reviews a district court's denial of discovery under an abuse of discretion standard. *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009). Under the abuse of discretion standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether any reasonable person could agree with the district court. *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984).

**ARGUMENT**

Anicich's Amended Complaint fails to set forth negligence by the Grand Defendants. It fails to set forth a duty owed by the Grand Defendants to Bromfield and it fails to set forth the foreseeability of Cooper's violent acts toward Bromfield. Judge Alonso properly dismissed Anicich's Complaint and her Amended Complaint. Because neither pleading could survive a motion to dismiss and because Anicich never made more than an off the cuff oral request for discovery, Judge Alonso properly refused to allow discovery. Anicich's appeal overlooks or intentionally ignores Illinois law regarding the "no affirmative duty rule" and jumps straight to a foreseeability analysis (an analysis that doesn't even occur unless her claims fall within one of the exceptions to the no affirmative duty rule). Her foreseeability analysis is flawed and unsupported by reference to any caselaw and it ignores the district court's thoughtful and thorough consideration of the facts alleged in the amended complaint.

**I. Standard for Motion to Dismiss**

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To withstand a motion to dismiss a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998).

## II. Anicich's Discussion of the Federal Pleading Standards is a Red Herring

As an initial matter, and because the discussion in Anicich's brief is so glaringly irrelevant (a theme that will resurface several times in this brief), Appellee notes that Anicich's two-page discussion of Federal Rule of Civil Procedure 8's notice pleading requirements is a red herring. Judge Alonso's Memorandum and Opinion assumed that each of Anicich's facts were true, it set forth the requirements for pleading each of Anicich's causes of action and then analyzed the Amended Complaint in light of those requirements. Nowhere in the Memorandum and Opinion does Judge Alonso hold that Anicich failed to meet Rule 8's notice pleading requirements and nowhere does he hold that the Amended Complaint failed to put the defendants on notice of the claims. Judge Alonso's adherence to the notice pleading standard went as far as discussing and ruling upon Anicich's unpled negligent supervision claim.

## III. Judge Alonso Correctly Held that the Amended Complaint Failed to State a Cause of Action for Negligence

To state a negligence claim under Illinois law, a plaintiff must plead (1) that the defendants owed the plaintiff a duty of care; (2) that they breached that duty of care; and (3) that the breach was the actual and proximate cause of the plaintiff's injury. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012). Duty is a question of law, *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007), while breach and proximate cause are matters for a jury. *Id.* The Grand Defendants' motion to dismiss argued that they did not owe a duty of

care to protect Bromfield from Cooper while the two were in Wisconsin at a personal social function. Judge Alonso correctly found that no duty was owed.

**a. The Grand Defendants did not Owe a Duty of Care to Bromfield**

People generally have no duty to protect against dangers created by third parties, though they do have a duty to protect against harms created by their own conduct. *Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. Of Directors*, 593 F.3d 507, 515 (7th Cir. 2010). Beyond harms created by a defendant's conduct, a defendant may also have a duty to protect a plaintiff from third parties if the defendant and the plaintiff stand in one of four "special relationships" with one another. Once the court has determined that the special relationship exists or that the defendant's conduct created the harm, the court then analyzes four factors to determine whether a duty to protect exists: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010); *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App. 3d 746, 754 (5th Dist. 2004). Anicich's Amended Complaint fails to allege any special relationship, it fails to allege that Bromfield's murder was reasonably foreseeable, it fails to analyze the burden on the Grand defendants of guarding against harms suffered by private citizens attending personal social events or the consequences of placing that burden on the Grand defendants. The District Court analyzed each of these elements and found the Amended Complaint

lacking in each one. Nothing in Anicich's brief controverts the Court's findings or analysis.

**b. The Grand Defendants did not Stand in One of the Recognized Special Relationships with Bromfield**

The general rule in Illinois is that one has no affirmative duty to control the conduct of another to prevent a criminal attack on a third party. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 503 (1988); Restatement (2d) Torts § 315 (1965). The sole exception to the no affirmative duty rule requires a "special relationship" between the actor and the one whose conduct is to be controlled. *Estate of Johnson*, 119 Ill. 2d at 503. Only after first determining that the special relationship exists does the foreseeability question become pertinent. *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552, 559-60 (1975).

Illinois recognizes four special relationships: (1) common carrier and passenger; (2) innkeeper and guest; (3) custodian and ward; and (4) possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 438 (2006). None of those special relationships apply given the facts set forth in the amended complaint and the absence of these special relationships alone justifies the District Court's decision.

**c. Neither Cooper's Attack nor Bromfield's Murder were Reasonably Foreseeable**

Assuming that Anicich can derive one of the four special relationships out of the Amended Complaint's allegations, the Grand Defendants still lacked a duty to protect Bromfield because Cooper's attack was not reasonably

foreseeable. The District Court inferred that Grand knew that Cooper had sexually harassed and verbally abused Bromfield and another female employee, that he had angrily thrown items around a Home Depot store and that he failed to complete an employer mandated anger management course. Despite these allegations, the Court found that Bromfield's attack and murder was not reasonably foreseeable because Cooper had never been physically violent to Bromfield or anyone else prior to the murder and because he had not so much as even threatened violence. Anicich claims, without support, that "reported sexual harassment, verbal abuse, throwing items at a workplace, and failing to complete anger management classes are sufficient indications that Cooper would commit sexual and violent acts against Alisha" (Appellant's Brief at 16) and claims that the Court imposed a heightened pleading burden on Plaintiff (Appellant's Brief at 15).

Under Illinois law, the risk of the specific act need not be foreseeable before a duty of care will arise. *Slager v. Commonwealth Edison Co.*, 595 N.E.2d 1097, 1103 (Ill. App. Ct. 1991). However, some risk of harm must be foreseeable. *Id.* The District Court's Memorandum notes that Anicich's Amended Complaint "frequently cites 'violent' behavior of which defendants were allegedly aware, it is not alleged that Cooper had been physically violent to Bromfield or anyone else prior to the murders or had threatened violence." (Dkt.# 79 at p. 8). Anicich's Amended Complaint and her brief set forth a multitude of offensive behaviors including instances of sexual harassment, inappropriate language and angry outbursts directed toward inanimate objects

(Dkt.# 61). None of that conduct, however, makes Cooper's murder of Bromfield objectively foreseeable. Anicich's foreseeability claim fails to address how the Grand Defendants could have or should have known that Cooper would murder Bromfield. That same claim, likewise, fails to address why Bromfield was with Cooper at a private function in Wisconsin – if Cooper was so dangerous that his employers (who are located in Michigan) should have known of the danger to Bromfield, why didn't Bromfield, who worked with Cooper on a daily basis, know of that danger?

Foreseeability is not judged in hindsight. *Morgan v. Dalton Management Company*, 117 Ill. App. 3d 815, 819 (1st Dist. 1983). For a duty to arise, the risk of harm must have been objectively, reasonably foreseeable to the defendant based on what was apparent to the defendant at the time of the complained of conduct. Anicich's complaint fails to set forth any instances of violence directed toward Bromfield; it fails to set forth any instances of violence directed toward anything other than inanimate objects. While Cooper may have had "an angry temper" (to use Anicich's phrase) that temper, including its manifestations, does not rise to the level of objective foreseeability necessary to impose a duty of care.

To establish that an injury was reasonably foreseeable for purposes of demonstrating a duty, a plaintiff must demonstrate that the conduct complained of was "objectively reasonable to expect." *Cobb v. Martin IGA & Frozen Food Center, Inc.*, 337 Ill. App. 3d 306, 314 (5th Dist. 2003). "Serious crimes are generally unforeseeable because they are different in nature from

what employees in a lawful occupation are expected to do." *Wright v. City of Danville*, 174 Ill. 2d 391, 405 (1996); *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 238 (2000). Anicich contends that Bromfield's murder was reasonably foreseeable because Grand knew that Cooper had sexually harassed and verbally abused Bromfield and another female employee, had angrily thrown items in the store and had failed to complete an employer-mandated anger management course. Neither the Amended Complaint nor the Appellant's brief close the gap between alleged sexual harassment or violence to inanimate objects and murder. The District Court properly found that such conduct did not rise to the level necessary to make Cooper's attack on, and murder of Bromfield objectively reasonable. That decision was not erroneous.

## IV. The Restatement (Second) of Agency did not Impose a Duty to Protect Bromfield

Citing the Restatement (Second) of Agency § 512(1), Anicich claims that the Grand defendants had a duty to protect Bromfield while she was attending a personal function because "the [Grand defendants] knew Cooper would do a sexually violent act to [Bromfield] and that he was using his supervisory authority over [Bromfield's] employment to have access and power over her" (Appellant's Brief at 26). The district court analyzed Section 512(1) and correctly found that it did not apply.

The Restatement (Second) of Agency § 512(1) provides "if a servant, <u>while acting within the scope of his employment</u>, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for failure by himself or

by such person to exercise reasonable care to avert the threatened harm" (emphasis added). The District Court found that this section was inapplicable because Bromfield was not working when she was attacked and attending the wedding was not within the scope of her employment (Dkt.# 79 at p 9). Rather than address the Court's findings, Anicich's brief focuses solely on the distance between Illinois and Wisconsin (Appellant's Brief at 26-27) and in doing so misses the mark. The distance question, while impacting the duty to protect, is ultimately immaterial with respect to Section 512(1) because that section is limited to imminent danger that a servant comes into "while acting within the scope of his employment." Because Bromfield was not acting within the scope of her employment while attending the wedding, the Restatement is inapplicable and does not impose a duty.

### a. Even if Cooper's Attack was Reasonably Foreseeable, the Burden of Guarding Against the Harm is so Great that no Duty of Care Arose

Foreseeability is the start of the duty analysis (always assuming that Anicich can demonstrate that Bromfield falls within one of the recognized special relationships) but it is not the end. *Gustafson v. Mathews*, 441 N.E.2d 388, 390 (Ill. App. Ct. 1982). Before a duty of care will arise, a plaintiff must establish that the foreseeable risk of harm to the person standing in one of the recognized special relationships is greater than the burden of protecting against that harm. *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App. 3d 746, 754 (5th Dist. 2004).

Relying on *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2010), Anicich claims that the burden of protecting Bromfield from Cooper's attack, an attack that occurred in another state at a purely personal function, would be negligible (Appellant's Brief at p. 25). In *Reynolds*, the Court held that a bar had a duty to protect its patrons from criminal activities which it knew would occur. *Reynolds*, 623 F.3d at 1151 ("we do not think it overly burdensome to require a bar to protect against criminal attacks of the kind in this case if it knows they will be perpetrated") (emphasis added). *See also*, *Reynolds*, 623 F.3d at 1152 ("although CB Sports was not obligated to investigate Russel and Carson's motives behind buying Reynolds drinks or driving her home, once it allegedly learned of their ill motives it acquired the duty to protect Reynolds from the attack). The *Reynolds* decision is limited to those instances in which a defendant, already standing in the proper relationship with the plaintiff, knows that a crime will be committed against the plaintiff and knows that the defendant's actions are facilitating that crime.

The District Court originally found that the burden of protecting Bromfield from Cooper's attack was so great that no duty could arise (Dkt. # 60 at p. 13). Anicich's amended complaint and her response to the motion to dismiss that complaint failed to address the burden of policing Bromfield's personal relationships. The Complaint alleges that Cooper and Bromfield had a personal relationship and that Bromfield attended Cooper's sister's wedding as his date. The amended complaint also alleges that while Bromfield was being murdered, the Grand Defendants thought she was at work (Dkt.#61 at ¶

52) because of an elaborate scheme perpetrated by Cooper and Bromfield whereby an unidentified third party clocked Bromfield into work using a Home Depot landline (Id). Finally, as noted by the District Court, the Amended Complaint fails to allege that Cooper was ever violent toward Bromfield (Dkt.# 79 at p. 8 "although plaintiff frequently cites 'violent' behavior of which defendants were allegedly aware, it is not alleged that Cooper had been physically violent to Bromfield or anyone else prior to the murders or had threatened violence"). It is against this backdrop that the burden of protecting Bromfield must be evaluated.

Protecting Bromfield, under the circumstances alleged in the amended complaint, would have required the Grand defendants to assume a parental role in the lives of their employees. The Grand defendants would have had a say in who Bromfield socialized with, who she dated and with whom she attended personal functions. Assuming they exercised that parental role, they would have needed to monitor Bromfield to insure that she did not attend the wedding (of which they had no knowledge). To guard against the clocking in scheme, the Grand defendants (Michigan corporate entities) would have had to shadow Bromfield while she was at work to insure that her time was being accurately reported in real time. Anicich's appellate brief, like her pleadings in the District Court, fails to discuss the immense (and likely illegal) steps the Grand defendants would have had to have taken to protect Bromfield from an unforeseen and unforeseeable crime that occurred in another state following a function Bromfield voluntarily attended in a room she voluntarily shared with

Cooper.[2] Because those steps are immense and would have, in the district court's words, "unreasonable consequences" (Dkt.# 60 at p. 13), the District Court properly found that no duty of care exists.

## V. The District Court did not Decide an Issue of Proximate Cause - its Decision was Limited to the Duty Analysis. The "Clocking in Scheme" was Considered and Addressed

Anicich's brief makes much of the "clocking in scheme" whereby Cooper arranged for someone to clock Bromfield into work while she was at Cooper's sister's wedding. Though the brief fails to explicitly argue the point, the implication of the clocking in scheme is that Bromfield's murder was a danger she was exposed to while in the scope of her employment. Anicich contends that the District Court erred by overlooking or disregarding the scheme and by making fact determinations that are inappropriate in a motion to dismiss (Appellant's brief p. 20), though she fails to identify the fact determinations supposedly made. The District Court, however, specifically addressed the clocking in scheme and found that the scheme, as detailed in the amended complaint, was made false by the allegations of the amended complaint (Dkt. #79 at p. 9), specifically the allegations that Bromfield was at a personal function (a wedding) and not working while she was supposedly clocked in.

---

[2] Appellee is cognizant of the allegations regarding the employment pressure Cooper placed on Bromfield and is cognizant of the likely argument that such pressure made Bromfield's attendance at the wedding involuntary but also note that Bromfield, while attending the wedding, rebuffed Cooper's request for a more formal, romantic relationship (Dkt.# 61 at ¶ 53) and submit that such refusal is directly counter to the allegations regarding employment pressure. If Bromfield was sufficiently worried about her job that she travelled from Illinois to Wisconsin with Cooper and agreed to share a room with Cooper, it is likely that she would also have agreed to a relationship with Cooper.

Anicich also claims that the District Court "erred in negating these facts, instead of viewing them in the light most favorable to Plaintiff" and claims that when those facts (the clocking in scheme and the Grand Defendants' knowledge of Cooper's practices and proclivities) are viewed in the "light most favorable to [Anicich], the inference is that the employers knew Cooper abused his authority to be alone with, and take advantage of [Bromfield]." Even if this were the case, and even if this Court could infer that Cooper abused his position of authority to be alone with and take advantage of Bromfield, that conduct does not make it reasonably likely that Cooper would murder Bromfield or that he would rape Bromfield's corpse. Like Anicich's discussion of Federal Rule of Civil Procedure 8's pleading requirements, the proximate cause discussion is irrelevant, as is the argument that the court failed to draw fanciful inferences whereby Cooper's transition from abusing a position of authority to murdering Bromfield while at a wedding in Wisconsin was foreseeable to anyone but not foreseeable to Bromfield.

Putting aside the Court's Memorandum and Order (as we must do to give credence to the proximate cause discussion) Cooper's unforeseen and unforeseeable criminal act was an intervening and superseding cause of Bromfield's death. Under Illinois law, if a defendant's conduct is so remote from the events leading to a plaintiff's injury that it can be said, as a matter of law, such conduct was not a contributing legal cause, the defendant is not liable. *Watson v. Enterprise Leasing Company*, 325 Ill. App. 3d 914, 923 (1st Dist. 2001). *See also*, *Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004)

(“although proximate cause is generally a question of fact, the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause”). In other words, “if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the creation of the condition is not the proximate cause of the injury. The test that should be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party’s own negligence.” *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257 (1999). As set forth above, there are no allegations that Cooper was violent to anyone, there is nothing to suggest that Cooper’s attack, murder and rape of Bromfield was foreseeable. Because the attack, murder and rape were not foreseeable, even if the Grand defendants were negligent in the ways charged, Cooper’s independent criminal act severed the proximate cause chain as a matter of law. *Ernst v. Parkshore Club Apartments Ltd. Partnership*, 863 F. Supp. 651, 656 (N.D. Ill. 1994).

## VI. The Amended Complaint Fails to State a Cause of Action for Negligent Supervision

The District Court considered, and found lacking, the negligent supervision sleeper claim raised (but not as a count) in the Complaint and Amended Complaint. Anicich takes issue with the District Court’s decision because she contends “the Employers knew of Cooper’s pattern of misconduct and violent tendencies against female subordinates and accordingly knew or

should have known that Cooper was unfit in his role as supervisor" (Appellant's Brief at 31) and because, citing *Rapier v. Ford Motor Co.*, 49 F. Supp. 2d 1078 (N.D. Ill. 1999) "a plaintiff successfully puts a defendant on notice of a negligent supervision claim by alleging that defendant employees, managers, and supervisors subjected plaintiff to abusive and violent conduct, that defendant knew or should have known about the conduct but retained the problematic employee and permitted the conduct, and that as a proximate cause the plaintiffs were harmed."

As an initial matter, *Rapier* did not concern violent conduct, it involved a class action by female employees for violations of Title VII along with negligent supervision claims. Under Illinois law, to succeed in a negligent supervision action, a plaintiff must plead and prove "that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury." *Platson v. NSM America, Inc.*, 322 Ill. App. 3d 138, 144 (2d Dist. 2001); *Van Horne v. Muller*, 185 Ill. 2d 299, 313 (1998). Satisfying the proximate cause element requires a demonstration of a "tangible connection" between the employees's particular unfitness for the job and the resulting harm to the plaintiff. *Platson*, 322 Ill. App. 3d at 144.

As set forth above, the particular unfitness alleged is that Cooper was rude to Bromfield and other female employees and that he was mean to inanimate objects (Dkt.#61 at ¶ 65). The facts pled do not make the attack and

murder foreseeable nor are they tangibly connected to the attack, murder and rape. The District Court correctly dismissed the negligent supervision claim.

**VII. The District Court Correctly Dismissed the Survival Claim**

Survival actions allow for the recovery of damages for injuries sustained by a decedent up to the time of death. *Cretton v. Protestant Memorial Medical*, 371 Ill. App. 3d 841, 846 (5th Dist. 2007); *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 401 (2d Dist. 1992). The Survival Act does not create a cause of action, but preserves a cause of action that accrued and existed before death. *Myers v. Heritage Enterprise*, 332 Ill. App. 3d 514, 516-17 (4th Dist. 2002). As set forth above, the Amended Complaint fails to set forth negligence by the Grand defendants, it fails to set forth a duty owed by the Grand defendants to Bromfield or her unborn child and it fails to set forth the foreseeability of Cooper's heinous acts. Because the tort claims fail, the survival claim fails and it was properly dismissed.

**VIII. The District Court Correctly Dismissed the Wrongful Death Claim**

Wrongful death claims are derivative of a decedent's rights. *Varelis v. Northwestern Memorial Hosp.*, 167 Ill. 2d 449 (1995) and will not lie if the decedent, at the time of death, could not maintain an action against the defendant. *Miller v. American Infertility Group of Illinois, S.C.*, 386 Ill. App. 3d 141 (1st Dist. 2008). Because Bromfield could not, at the time of her death, maintain a negligence cause of action against the Grand defendants for the reasons set forth herein, the District Court correctly dismissed the wrongful death claim.

## IX. The Grand Defendants did not Owe a Duty of Care to Baby Ava Lucille

For the reasons set forth herein, the Grand defendants did not owe a duty of care to Bromfield's unborn child. Particularly, because Cooper's attack on Bromfield was not reasonably foreseeable, the resultant injury to the unborn child was, likewise, not foreseeable.

## X. The Court Properly Disallowed Discovery While the Motion to Dismiss was Pending

Anicich alludes to an erroneous decision by the Court in denying her oral request for discovery during the pendency of the appeal (Appellant's Brief at 3-4; 12; 18). The Court's denial of the oral discovery request is not part of the notice of appeal, it is not raised as an appellate issue and beyond the allusions, is not discussed in the brief. Accordingly, that issue is waived. *Washington v. Indiana High School Athletic Ass'n., Inc.*, 181 F.3d 840, 843 n.4 (7th Cir. 1999). Even if the issue were not waived, the District Court has wide discretion in its decisions regarding discovery, 498 F. Supp. 2d 1101 (N.D. Ill. 2007). Nothing in the record suggests that the Court's decision to not allow discovery while a motion to dismiss an amended complaint was pending was erroneous, especially in light of the fact that the amended complaint was substantially similar to the previously dismissed complaint.

## CONCLUSION

Bromfield's death was tragic and came as a surprise to everyone. Anicich is undoubtedly hurt and she is casting for someone to blame. While the Grand defendants are sympathetic, they are not responsible for Bromfield's

death or the death of her baby. Cooper's attack and Bromfield's murder were not reasonably foreseeable and nothing in the Amended Complaint suggests that the Grand defendants knew or should have known that Cooper would murder anyone. Guarding Bromfield while she was at a personal function and, by her own admission, lying about her whereabouts, would require the Grand defendants to assume a role akin to that of a parent. Such an invasive level of oversight would have opened the Grand defendants to a host of problems, including claims of invasion of privacy. It also would have required that the Grand defendants monitor Bromfield's activities on a continuous basis.

Because the Grand defendants lacked a duty to protect Bromfield, her wrongful death and survival claims fail. Likewise, her negligent supervision claim fails because Cooper's alleged unfitness is not connected to Bromfield's attack and murder.

The District Court correctly determined that both the Complaint and Amended Complaint failed to allege a cause of action and correctly dismissed each. For each of these reasons, the District Court's Memorandum and order should be upheld.

Respectfully submitted,

*/s/ William Busse*
C. William Busse

C. William Busse
Scott Berends
BUSSE, BUSSE & GRASSÉ, P.C.
20 N. Wacker Drive, Suite 3518
Chicago, Illinois 60606
312/750-1212
312/750-1211 Fax
Email: service@bussepc.com

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing Brief of Defendants-Appellees Grand Service, LLC and Grand Flower Growers, Incorporated complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,545 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 12 point Bookman Oldstyle font.

*/s/ William Busse*
C. William Busse

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2016 the Brief of Defendants-Appellees Grand Service, LLC and Grand Flower Growers, Incorporated was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ William Busse*
C. William Busse