**No. 16-1693**

# In the
# United States Court of Appeals
## for the Seventh Circuit

SHERRY ANICICH, Independent Administrator of the Estate of
ALISHA BROMFIELD, Deceased, and as Special Administrator of the
Estate of BABY AVA LUCILLE,

*Plaintiff-Appellant,*

v.

HOME DEPOT U.S.A., INCORPORATED, GRAND SERVICE, LLC,
and GRAND FLOWER GROWERS, INCORPORATED,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:14-cv-07125.
The Honorable **Jorge L. Alonso**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLEE
## HOME DEPOT U.S.A., INCORPORATED

BENJAMIN J. GALLOWAY, ESQ.
McVEY & PARSKY, LLC
30 North LaSalle Street
Suite 2100
Chicago, Illinois  60602
(312)551-2130
bjg@mcveyparsky-law.com

*Counsel for Defendant-Appellee,*
*Home Depot U.S.A., Inc.*

## ORAL ARGUMENT REQUESTED



PRINTED ON RECYCLED PAPER



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 16-1693

Short Caption: Sherry Anicich v. Home Depot, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Home Depot U.S.A., Inc.

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

McVey & Parsky, LLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        Home Depot U.S.A., Inc. is a direct, wholly-owned subsidiary of The Home Depot, Inc.

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        No publicly held companies own 10% or more of the stock The Home Depot, Inc.

Attorney's Signature: s/ Benjamin J. Galloway      Date: April 12, 2016

Attorney's Printed Name: Benjamin J. Galloway

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes**  X   **No** _____

Address: 30 N. LaSalle St., Suite 2100, Chicago IL 60602

Phone Number: (312) 551-2130      Fax Number: (312) 551-2131

E-Mail Address: bjg@mcveyparsky-law.com

rev. 01/15 GA

# TABLE OF CONTENTS

**CIRCUIT RULE 26.1 CORPORATE DISCLOSURE STATEMENT** ................................. i

**TABLE OF CONTENTS**................................................................................................ ii

**TABLE OF AUTHORITIES**........................................................................................iv

**JURISDICTIONAL STATEMENT** ...........................................................................1

**STATEMENT OF THE ISSUES** ...............................................................................1

**STATEMENT OF THE CASE** ..................................................................................2

A.     Procedural History....................................................................................2

B.     Statement of Facts. ...................................................................................4

**SUMMARY OF THE ARGUMENT** .........................................................................8

**STANDARD OF REVIEW** .......................................................................................10

**ARGUMENT**............................................................................................................12

I.     Generally, there is no duty to protect another from the criminal actions of
       third parties. Because the Plaintiff cannot show that any exceptions apply
       to her facts, she cannot allege duty, and therefore cannot recover as a
       matter of law ...........................................................................................12

       A.     Plaintiff waived any argument under the business invitee
              exception. Moreover, Home Depot owed no duty to Alisha
              because she was not a business invitee when Cooper attacked her...........14

       B.     Home Depot had no duty to warn Alisha of the danger posed by
              Cooper pursuant to § 512 of the Restatement (Second) of Agency
              because the danger bore no relationship to her employment. ...................19

       C.     Any argument under in-concert liability has been waived. Even if
              not waived, it fails because Home Depot is not alleged to have
              actively participated in Cooper's crime. .......................................20

II.    Cooper's criminal attack upon Alisha was neither reasonably foreseeable, nor likely. Further, any duty imposed upon Home Depot in this case would have terrible consequences for the state of the law, and Illinois businesses. ..................................................................................22

      A.    The District Court correctly held that a reasonably prudent person would not be on notice of the *probability* of an attack under the circumstances alleged...........................................................22

            1.    The Plaintiff's attempt to re-label the issue as one of causation is transparent and illogical. .................................24

            2.    Plaintiff's general description of Cooper as "violent" and "threatening" do not make the crime reasonably foreseeable or likely. ......................................................................24

      B.    The consequences of imposing a duty on Home Depot in this case are too great to sustain that duty....................................................25

III.   The District Court correctly held that Plaintiff failed to state a claim for negligent supervision. ..................................................................26

IV.    The District Court correctly enjoined the Plaintiff from taking discovery at the pleadings stage of this lawsuit ...............................................28

**CONCLUSION**....................................................................................29

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)** ...................................30

**CERTIFICATE OF SERVICE**..................................................................31

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... 10, 11, 25

*Badillo v. DeVivo,*
   161 Ill. App. 3d 596 (1st Dist. 1987) .................................................. 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................... 10, 11

*Burks v. Madyun,*
   105 Ill. App. 3d 917 (1st Dist. 1982) .................................................. 23

*Contini ex rel. Contini v. Green Dolphin, Inc.,*
   2013 WL 4401035 (Ill. App. 1st Dist. 2013) ....................................... 17, 18

*Fitzpatrick v. Carde Lounge, Ltd.,*
   234 Ill. App. 3d 875 (1st Dist. 1992) .................................................. 15

*Gustafson v. Mathews,*
   109 Ill. App. 3d 884 (4th Dist. 1982) ................................................. 15

*Haupt v. Sharkey,*
   358 Ill. App. 3d 212 (2nd Dist. 2005) ................................................ 16

*Hills v. Bridgeview Little League Ass'n,*
   195 Ill. 2d 210 (2000) ......................................................................... 14

*Iseberg v. Gross,*
   227 Ill. 2d 78 (2007) ........................................................................... 8, 12, 13

*Iseberg v. Gross,*
   366 Ill. App. 3d 857 (1st Dist. 2006) .................................................. 9, 13

*Kuttner v. Zaruba,*
   819 F.3d 970 (7th Cir. 2016) .............................................................. 11, 28

*Laborers' Int'l Union of N. Am. v. Caruso,*
   197 F.3d 1195 (7th Cir. 1999) ............................................................ 14

*Lewis v. Razzberries, Inc.,*
    222 Ill.App.3d 843 (1st Dist. 1991)................................................ 14, 15

*Marshall v. Burger King Corp.,*
    222 Ill. 2d 422 (2006) ............................................................ 14, 25

*Osborne v. Stages Music Hall, Inc.,*
    312 Ill.App.3d 141 (1st Dist. 2000)................................................ 14, 16

*Petersen v. U.S. Reduction Co.,*
    267 Ill. App. 3d 775 (1st Dist. 1994) ........................................... 19, 20

*Regions Bank v. Joyce Meyer Ministries, Inc,*
    2014 IL App 130193 (5th Dist., Aug. 12, 2014).................................27

*Reynolds v. CB Sports Bar, Inc.,*
    623 F.3d 1143 (7th Cir. 2010) .............................................. passim

*Robin v. Espo Eng'g Corp.,*
    200 F.3d 1081 (7th Cir. 2000) ................................................... 14

*Simpkins v. CSX Transp., Inc.,*
    2012 IL 110662 (Ill. 2012) ................................................. 12, 22

*St. Phillips v. O'Donnell,*
    137 Ill. App. 3d 639 (2nd  Dist. 1985)............................................ 15

*Van Horne v. Muller,*
    185 Ill. 2d 299 (1998)............................................................ 27

*Vesely v. Armslist LLC,*
    762 F.3d 661 (7th Cir. 2014) .............................................. 21, 22

*Wilk v. 1951 W. Dickens, Ltd.,*
    297 Ill. App. 3d 258 (1st Dist. 1998).............................................. 15

## **RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................. 11

Fed. R. Civ. P. 12(b)(6) .......................................................... 2, 3, 22

## OTHER AUTHORITIES

*Restatement (Second) of Agency* § 471 .......................................................................................... 3

*Restatement (Second) of Agency* § 512(1).................................................................... 3, 9, 19, 20

*Restatement (Second) of Torts* § 314A (1965) ........................................................................ 15

*Restatement (Second) of Torts* § 317 (1965) ..................................................................... 27, 28

*Restatement (Second) of Torts* § 876 ..................................................................... 19, 20, 21, 22

## JURISDICTIONAL STATEMENT

The Jurisdictional Statement contained in the Appellant's Brief is complete and correct.

## STATEMENT OF THE ISSUES

I.     Does Illinois law recognize any duty owed by an alleged employer to protect an alleged employee from criminal attack and murder where: (1) neither the victim nor her attacker were under the care or control of employer at the time of the attack; (2) the murder took place 250 miles away from the victim's and the attacker's mutual workplace; (3) neither the victim nor attacker was in fact working when the murder occurred; (4) no implements of the job were used to commit the crime; and (5) violent attack and murder was not a danger germane to the victim's alleged work?

II.    Assuming *arguendo* there is a legal pathway to recovery, did the District Court correctly rule that Cooper's criminal attack upon, and ultimate murder of, the Plaintiff's decedent was not reasonably foreseeable, and not likely? Assuming *arguendo* that the District Court ruled incorrectly,  does the magnitude of the burden of such a duty and the consequences of placing that duty on Illinois employers justify the finding that no duty is owed?

III.   Did the District Court correctly rule that Plaintiff cannot state a claim for negligent supervision, where neither the decedent's attacker nor the decedent

were working at the time of the attack, and when the attack itself bore no

relationship to the decedent's and attacker's mutual employment?

IV.     Did the District Court abuse its discretion by prohibiting Plaintiff from taking

discovery during the pendency of Defendants' purely legal motions to dismiss?

## STATEMENT OF THE CASE

**A.     Procedural History.**

The Plaintiff/Appellant, Sherry Anicich, ("Plaintiff") initiated this lawsuit on

August 11, 2014, by filing a complaint in the Circuit Court of Cook County against

Home Depot U.S.A., Inc. d/b/a Home Depot ("Home Depot"), John and Todd Mossel,

Grand Service LLC, Grand Flower Growers, Inc. and Vinca Solutions (collectively

"Defendants"). (Dkt. 1, Ex. A). On September 12, 2014, Grand Flower Growers, Inc.,

Grand Services, LLC (collectively, "Grand") and the Mossels removed this matter to the

United States District Court for the Northern District of Illinois. (Dkt. 1). The

Defendants all moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). (Dkt.

(Dkt. 14, 16, 19 and 38).

The District Court dismissed the Plaintiff's complaint on June 9, 2015. (Dkt. 60).

The District Court concluded that, based on the facts asserted in the complaint, it was

not reasonably foreseeable that Cooper would attack Alisha, and it certainly was not

likely. (Dkt. 60, pp. 10 – 12). It also held that the burden of guarding against a murder

occurring so far from the place of employment would be immense. (Dkt. 60, p. 13). The

court pointed out that no "…Illinois authority…recognizes an employer's duty in circumstances like those presented here or even remotely similar circumstances." (Dkt. 60, p. 17). However, the District Court allowed the Plaintiff leave to file an amended complaint. (Dkt. 60, p. 19).

Plaintiff filed her amended complaint on June 30, 2015. (A-13, Dkt. 61). This is the operative complaint for purposes of the Plaintiff's appeal. The Plaintiff named all of the original defendants as defendants in the Amended Complaint, but failed to include any allegations against the Mossels or Vinca Solutions. (A-13, Dkt. 61).

On August 3, 2015, Home Depot timely filed its motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (Dkt. 69). At a scheduling hearing for the motions on August 6, 2015, Plaintiff voluntarily dismissed Vinca Solutions and the Mossels, leaving only Home Depot and the Grand entities as defendants. (Dkt. 72). Plaintiff also requested discovery during the pendency of the motions to dismiss, which the District Court denied. (Dkt. 72).

The District Court granted Home Depot's motion to dismiss on March 11, 2016, finding that Plaintiff's additional allegations, which 1) did not allege past acts of violence; and 2) did not allege past threats of violence, were not enough to put a reasonably prudent person on notice of the *probability* of an attack. (A-8, Dkt. 79, p. 8). The District Court also found that the allegations of the Amended Complaint did not fall into two exceptions to the general rule that there is no duty to protect others from harm caused by third parties embodied by Restatement (Second) of Agency § 512(1) and 471. (A-8 – A-10, Dkt. 79, pp. 8 – 10). Finally, the Court found that Plaintiff's

allegations did not fulfill the requirements of a negligent supervision claim. (A-10, Dkt. 79, p. 10). The Court set a deadline of April 1, 2016, for the Plaintiff to move for leave to file a Second Amended Complaint, and stated that if the Plaintiff failed to do so, the Court would dismiss the action with prejudice. (A-11, Dkt. 79, p. 11).

Instead of moving for leave to file a Second Amended Complaint, Plaintiff filed her Notice of Appeal on March 30, 2016. (Dkt. 80). On April 4, 2016, the District Court dismissed the Plaintiff's Amended Complaint with prejudice (Dkt. 84) and entered judgment (Dkt. 85). Plaintiff filed her Appellate Brief on September 30, 2016.

**B.     Statement of Facts.**

In this lawsuit, Plaintiff attempts to recover from Home Depot and Grand for the appalling and tragic murder of Alisha Bromfield ("Alisha") by Brian Cooper ("Cooper") on August 19, 2012. (Dkt. 1, Ex. A, A-13). Alisha had agreed to accompany Cooper to his sister's wedding in Door County, Wisconsin—more than 250 miles away from their mutual work in the southwest suburbs of Chicago. (Dkt. 1, Ex. A, ¶¶ 6, 16). After the wedding, Cooper and Alisha began to argue because Alisha refused to be in a romantic relationship with Cooper. (Dkt. 1, Ex. A, ¶ 17). After the argument (or as a result of it), Cooper strangled Alisha until she was dead and, thereafter, undressed and raped Alisha's corpse. (Dkt. 1, Ex. A, ¶ 17). At the time, Alisha was nearly seven months pregnant. (Dkt. 1, Ex. A, ¶18). The pregnancy was terminated as a result of Alisha's murder and rape. (Dkt. 1, Ex. A, ¶18).

Cooper was Alisha's supervisor for approximately five years prior to her murder. (Dkt. 1, Ex. A, ¶ 7, A-15, ¶14). Alisha worked seasonally for Grand Service

LLC, and was paid through Vinca Solutions. (A-15, ¶ 14). The Amended Complaint alleges that Grand Flowers Growers, Inc. and Grand Service, LLC were "business partners and joint-venturers" with Home Depot (A-14-15, ¶9), but the original Complaint makes clear this is something Plaintiff seeks to prove. (See Dkt. 1, Ex. A, ¶¶ 6-7). In fact, Cooper was an employee of Grand Service, LLC. (Dkt. 1, Ex. A, ¶¶ 6-7). Grand Flowers Growers, Inc. was a flower supplier for various Home Depot stores throughout the south and southwest suburbs of Chicago. (Dkt. 71, p. 3, fn. 2). Grand Service employees tended to flowers supplied by Grand Flower Growers in the Home Depot garden centers, but were not employed by Home Depot. (Dkt. 1, Ex. A., ¶¶6-7, and Dkt. 71, p. 3, fn. 2). The Plaintiff seeks to show that Home Depot and Grand were "joint employers," a legal theory of employment, rather than a "fact." (A-14, ¶ 4).

Beginning in 2007, Cooper was the supervisor of a "young female employee" named Jessica (Watts) Boseo. (A-16, ¶ 18). It is alleged that Cooper engaged in inappropriate and offensive conduct toward Boseo, including making references to his penis, introducing Jessica as his girlfriend, and physically rubbing himself against her. (A-16, ¶ 19). It is also alleged that Cooper requested that Jessica accompany him on a business trip, but instead of doing any work with Boseo, Cooper drove to downtown Chicago and introduced Boseo as his girlfriend. (A-16-17, ¶ 20). It is not alleged when these events occurred. It is alleged that Boseo reported this conduct to Kelly Elwell, a "…group leader at Home Depot…." (A-16, ¶¶ 17, 21). However, Kelly Elwell was not a Home Depot employee. (Dkt. 75, p. 11).

It is vaguely alleged that Cooper's conduct toward Alisha was "threatening" and "sexually harassing." (A-17, ¶25). Plaintiff alleges that, on at least two unspecified occasions, Cooper called Alisha a "bitch." (A-17, ¶ 26). It is alleged that management at Home Depot's Joliet store sent Cooper home from work after he "slamm[ed] items around the store in fits of rage." (A-18, ¶ 29).

It is alleged that Cooper denied Alisha a break when she requested one during extremely hot working conditions, and also denied Alisha lunch breaks. (A-18, ¶ 33). It is alleged that Cooper called Alisha a "whore" and a "slut" when she asked for a day off, and that these comments were loud enough for Home Depot employees to hear. (A-18, ¶ 34). He was allegedly sent home after making these comments by Home Depot management, but he allegedly continued to yell at Alisha and another female employee. (A-19, ¶ 35). After leaving, he sent text messages to the women. (A-19, ¶ 35). After Cooper learned that Bromfield was pregnant with another man's child, Tina Clem (an alleged Home Depot manager) "witnessed Cooper stewing angrily in the patio section," and she thought that Cooper's attitude toward Bromfield changed. (A-19, ¶ 36).

It is alleged that Alisha reported unwelcome advances from Cooper to Grand's management, and it is alleged that Alisha requested not to be left alone with Cooper. (A-19, ¶¶ 37-38). It is alleged that, despite those reports, neither Grand nor Home Depot protected Alisha from Cooper. (A-19, ¶38).

The Amended Complaint does not allege any violence by Cooper toward other individuals; nor does it allege that Cooper threatened Alisha's life. It is generally alleged that Cooper had "anger problems" and "violent propensities." (A-20, ¶ 39).

6

While the amended complaint alleges that Grand and Home Depot "cooperated" with and "assisted" Cooper to be alone with Alisha, it does not describe how that assistance was rendered aside from alleging that individuals clocked Alisha into work at Cooper's direction. (A-20, ¶ 40).

Plaintiff alleges that Grand and Home Depot should have been aware that Cooper had dangerous anger propensities and psychological issues. (A-21, ¶ 44). Grand and Home Depot allegedly knew that Cooper took Alisha on trips to various Home Depot stores, "allegedly for work purposes," during which he "engaged in [unspecified] abusive and inappropriate conduct with" Alisha, "and one time required that they sleep in the same room." (A-21, ¶ 46). Neither Grand nor Home Depot ever terminated or demoted Cooper during his time working for Grand. (A-22, ¶ 48).

Plaintiff alleged that, on at least two occasions prior to the wedding, Cooper asked Alisha to attend the wedding with him, and that Alisha refused. (A-22, ¶ 49). Alisha agreed to go to the wedding with Cooper after allegedly being threatened with reduced work hours or termination if she refused. (A-22, ¶¶ 50 – 51). Plaintiff alleges, upon information and belief, that Cooper in fact arranged for Alisha to be clocked in during their trip to Door County, Wisconsin. (A-22, ¶ 52). According to the Plaintiff, this scheme was accomplished using a Home Depot land telephone line. (A-22, ¶ 52).

After attending the wedding with Alisha and introducing her to various members of his family, they went back to his hotel room. (A-22, 23, ¶ 53). Back at the hotel, Cooper proposed that Alisha submit to being in a relationship with Cooper, and an argument ensued when Alisha refused. (A-23, ¶ 53). Cooper threatened her, and

ultimately killed her by strangulation. (A-23, ¶ 53). Cooper then undressed Alisha's

body, and raped her corpse. (A-23, ¶ 53).


## <u>SUMMARY OF THE ARGUMENT</u>

I.      The Plaintiff has attempted to present this case as one of "workplace

violence" and "sexual harassment." Yet, the Plaintiff does not seek recovery for any of

the alleged workplace violence or sexual harassment experienced by Alisha. Instead,

Plaintiff sues Home Depot in negligence for Alisha's murder at the hands of Brian

Cooper. This appeal is about whether Home Depot had a duty to protect Alisha from

this intentional, criminal conduct at the time of her murder – when she was not working

and was not on Home Depot's premises.

All of the claims set forth by Plaintiff in the Amended Complaint sound in

negligence, and therefore Plaintiff must plead facts that show a duty owed by the

Defendants in order to recover. *Iseberg v. Gross*, 227 Ill. 2d 78, 86-87 (2007). Under the

facts of this case, the Plaintiff must show that Home Depot had a duty to protect Alisha

from Cooper's criminal attack. "Under common law, the universally accepted rule,

articulated in section 314 of the *Restatement (Second) of Torts*, and long adhered to by [the

Illinois Supreme Court], is that a private person has no duty to act affirmatively to

protect another from criminal attack by a third person absent a 'special relationship'

between the parties." *Id.*

Because the general rule in Illinois is that one person has no duty to protect

another, the Plaintiff must show that her case qualifies under one of the recognized

exceptions to the general rule. But the Plaintiff cannot qualify as a business invitee so far from Home Depot's premises in time and place. Further, the Plaintiff cannot state a claim under § 512(1) because neither Alisha nor Cooper were working or engaging in any activity related to the employment at the time Cooper murdered Alisha. Finally, the Plaintiff cannot state a claim under an in-concert theory of liability. Thus, the Plaintiff cannot show the Home Depot owed a duty of care, and cannot recover as a matter of law. The District Court's dismissal should be affirmed.

II.     Even if the Plaintiff had a viable, legally-recognized route to recovery, which she does not, the Court must analyze the four duty factors when determining whether a duty exists: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. See *Iseberg v. Gross*, 366 Ill. App. 3d 857, 861 (1st Dist. 2006), *aff'd*, 227 Ill.2d 78 (2007); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010) (other citations omitted). Any analysis of these factors militates against a finding of duty.

In an attempt to convince both the underlying Court and the Seventh Circuit Court of Appeals of the foreseeability and likelihood of Cooper's attack on Alisha, the Plaintiff details Cooper's past, non-violent behavior. Sexual harassment and tempera-mental behavior at work, while deplorable, do not create reasonable foreseeability or likelihood of murder while away from work. Moreover, the implications of imposing a duty onto Home Depot under the facts here are too great to bear the duty. Brian Cooper murdered Alisha in a setting where Home Depot could not control either his behavior

or Alisha's. Further, an imposition of a duty here would impermissibly expand the concept and most likely render the concept of duty a meaningless pleading technicality in cases such as this.

III.    Plaintiff cannot recover under a theory of negligent supervision or negligent retention because the nature of Cooper's unfitness for his employment was not reasonably foreseeable to Home Depot; and Cooper was not under Home Depot's control when he murdered Alisha.

IV.    To the extent the Plaintiff argues that the District Court erred in failing to allow discovery while the motions to dismiss were pending, she is incorrect. The District Court did not abuse its discretion in failing to allow discovery because the Defendants' motions were purely legal. Had the District Court allowed discovery, it would have effectively negated the entire purpose of filing legal motions at the pleadings stage of a lawsuit—to avoid the time and expense of discovery in cases that have no legal basis in the first place.

## STANDARD OF REVIEW

In this appeal, Plaintiff challenges the District Court's dismissal of her complaint on the basis that, under the circumstances, Home Depot and Grand did not owe Alisha a duty of protection from Cooper's attack. This Court reviews a District Court's grant of a motion to dismiss *de novo*. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (other citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While the reviewing Court must accept well pleaded facts as true, this principle is not applicable to legal conclusions. *Id.*, (citing *Bell Atlantic*, 550 U.S. at 555). "[W]here the **well-pleaded facts** do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (emphasis in original) (citing Fed. R. Civ. P. 8(a)(2)). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.

To the extent Plaintiff challenges the District Court's determination that Plaintiff was not entitled to discovery during the pendency of Defendant's motions to dismiss, that ruling is reviewed for abuse of discretion. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016), *cert. denied*, (U.S. Oct. 31, 2016).

# ARGUMENT

**I.    Generally, there is no duty to protect another from the criminal actions of third parties. Because the Plaintiff cannot show that any exceptions apply to her facts, she cannot allege duty, and therefore cannot recover as a matter of law.**

All of the claims in the Plaintiff's Amended Complaint are based in negligence. To recover, the Plaintiff must plead facts that establish a duty owed by the Defendant to the Plaintiff. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007), *Reynolds*, 623 F.3d at 1146. Alisha Bromfield was murdered by Brian Cooper in Door County, Wisconsin—more than 250 miles away from their mutual workplace. For Plaintiff to recover, therefore, she must plead facts showing that Home Depot had a duty to protect Alisha from Cooper's criminal attack.

The well-established law in Illinois is that there is no affirmative duty to protect another from a criminal attack by a third person absent a special relationship. *Iseberg v. Gross*, 227 Ill.2d 78, 87 (2007) ("Under common law, the universally accepted rule, articulated in section 314 of the *Restatement (Second) of Torts*, and long adhered to by this court, is that a private person has no duty to act affirmatively to protect another from criminal attack by a third person absent a 'special relationship' between the parties."); *Simpkins v. CSX Transp., Inc.*, 2012 IL 110662, ¶ 19 (Ill. 2012) ("Generally, individuals (and businesses) do not owe an affirmative duty to protect or rescue a stranger."); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010), ("[A] landowner will have a duty to protect lawful entrants against criminal attacks *on the premises* if the parties stand in a special relationship-such as between a business invitor and invitee, and the criminal attack was reasonably foreseeable…" (other citations omitted)). In

*Iseberg*, the Plaintiff attempted to convince the Illinois Supreme Court to abandon this

central rule of negligence law. *Iseberg*, 227 Ill. 2d at 93-101. After an in depth discussion,

the Illinois Supreme declined to abandon the rule, and it remains the law of Illinois:

> We may not depart from *stare decisis* without special justification.
> Where the rule of law has been settled and does not contravene any
> statute or constitutional principle, it may be disregarded only for
> "good cause" or "compelling reasons." In the case at bar, plaintiffs
> have not provided good cause or compelling reasons to judicially
> abandon the "special relationship" doctrine for finding an
> exception to the no-affirmative-duty rule. We will continue to
> adhere to its principles.

*Iseberg v. Gross*, 227 Ill. 2d 78, 101 (2007) (internal citations omitted).

There are four exceptions to the rule that a party does not owe a duty of care to

protect another from the criminal acts of third persons: (1) when the parties are in a

special relationship *and* the harm is foreseeable; (2) when an employee is in imminent

danger and this is known to the employer; (3) when a principal fails to warn his agent

of an unreasonable risk of harm involved in the agency; and (4) when any party

voluntarily or contractually assumes a duty to protect another from the harmful acts of

a third party. *Iseberg v. Gross*, 366 Ill. App. 3d 857, 861 (1st Dist. 2006), *aff'd*, 227 Ill. 2d 78

(2007) (other citations omitted) (emphasis added). There are four types of special

relationships recognized in the first exception: (1) common carrier and passenger, (2)

innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and

protectee. *Id*.

Though poorly structured, the Plaintiff appears to make arguments under the

first (business invitee) and second (imminent danger) exceptions to no duty general

rule. While Plaintiff made arguments under the third (risk of harm involved in employment) and fourth (undertaking) exceptions in the District Court, she has abandoned same on appeal by failing to raise those arguments in her appellate brief. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Home Depot will therefore address the business invitee and imminent danger exceptions. Home Depot will also address in-concert liability, which the Plaintiff also appears to argue.

### A. Plaintiff waived any argument under the business invitee exception. Moreover, Home Depot owed no duty to Alisha because she was not a business invitee when Cooper attacked her.

In the underlying proceedings, Plaintiff never argued that she could show a duty under any of the "special relationship" exceptions to the general no-affirmative-duty rule, even though Home Depot addressed these arguments in its own moving papers. (Dkt. 18, pp. 4-10; Dkt. 71, pp. 13-14; Dkt. 75, pp. 3-5). Yet she now appears to raise an invitee argument by repeatedly invoking cases that address an invitee theory of liability. See Appellant's Brief at 19, 20, 22, 27–28, discussing *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143 (7th Cir. 2012); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422 (2006); *Hills v. Bridgeview Little League Ass'n*, 195 Ill.2d 210 (2000); *Osborne v. Stages Music Hall, Inc.*, 312 Ill.App.3d 141 (1st Dist. 2000); and *Lewis v. Razzberries, Inc.*, 222 Ill.App.3d 843 (1st Dist. 1991). Accordingly, Plaitniff's arguments under an invitee theory are waived and this Court should not consider them. *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999).

Even if not waived, Alisha was not a business invitee at the time of her murder. Alisha and Cooper were more than 250 miles away from the Home Depot premises

where they had worked together when Cooper attacked her. They had been away from Home Depot for at least 24 hours, and there is no suggestion in the Amended Complaint that Home Depot had any idea that Cooper intended to murder Alisha at his sister's wedding. Under these circumstances, the business invitee "special relationship" exception to the general rule of no duty cannot apply because these individuals were simply not business invitees at the time of the murder. Under the business invitee special relationship, a landowner has a duty to protect lawful entrants against criminal attacks on the premises where those entrants are business invitees and the criminal attack is reasonably foreseeable. Once an individual leaves the property, however, they are no longer an invitee. *Restatement (Second) of Torts* § 314A (1965), comment *c*.

The vast majority of Illinois cases hold that business invitee status, and therefore any duty to protect the business invitee from foreseeable criminal acts of third parties, ends when the plaintiff leaves the business premises. *See, e.g.*, *Badillo v. DeVivo*, 161 Ill. App. 3d 596 (1st Dist. 1987); *Gustafson v. Mathews*, 109 Ill. App. 3d 884, 887–88 (4th Dist. 1982); *St. Phillips v. O'Donnell*, 137 Ill. App. 3d 639, 644 (2nd Dist. 1985); *Lewis v. Razzberries, Inc.*, 222 Ill. App. 3d 843, 850 (1st Dist. 1991); *Wilk v. 1951 W. Dickens, Ltd.*, 297 Ill. App. 3d 258 (1st Dist. 1998); *Fitzpatrick v. Carde Lounge, Ltd.*, 234 Ill. App. 3d 875, 879 (1st Dist. 1992). The reason for this rule makes sense: requiring business owners to protect invitees from harm caused by third persons away from the business premises would place an unjustifiable burden on businesses and police forces. *Wilk v. 1951 W. Dickens, Ltd.*, 297 Ill. App. 3d 258, 262 (1st Dist. 1998) (other citations omitted).

15

Only a handful of courts have found business invitee status that continues after a plaintiff leaves the defendants' premises, and those cases normally arise from circumstances where: 1) the business invitee was on the business's premises immediately prior to the occurrence; 2) the chain of events that gave rise to the plaintiff's injury began while the parties were on the business's premises; and 3) the occurrence is temporally close to the invitee's presence on the defendant's premises. *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141 (1st Dist. 2000) (An attack against patrons on the sidewalk just outside the business premises was reasonably foreseeable by two previously ejected men because: 1) the nightclub, earlier in the evening, had exercised control over the area of the sidewalk in which the attack occurred; and 2) the nightclub's bouncers knew the two men outside the club were intoxicated, combative, and angry); *Haupt v. Sharkey*, 358 Ill. App. 3d 212 (2nd Dist. 2005) (A pub had a duty to a business invitee because the invitee was attacked immediately after he stepped off of the pub's property, and the pub's duty included a providing a reasonably safe means of ingress and egress to patrons). None of these circumstances are alleged in this case, so the business invitee exception should not apply.

Plaintiff's reliance on *Reynolds v. CB Sports Bar*—a case she failed to cite in the District Court—is unpersuasive. (623 F.3d 1143 (2010)). In *Reynolds*, the plaintiff was a patron at a bar and, after attempting to leave the bar, found that her car would not start. According to the plaintiff, another couple at the bar planned to sexually exploit her. She alleged that the couple had made the bar aware of their plan to sexually exploit her. She further alleged that the bar, aware of the malicious plan, refused to provide the plaintiff

with a phone book to call a cab when her car would not start, and assured her that she would be safe getting a ride home with the couple. At some point during the ride home, Reynolds realized the couple's intent, and escaped from the couple's car when they stopped to buy cigarettes. Because she was extremely intoxicated, she wandered onto a highway on-ramp and was struck by a car, causing severe injuries. The injury occurred over a mile away from the bar. The Seventh Circuit reversed the Southern District of Illinois's grant of dismissal to the bar. Apparently finding that the patron was a business invitee at the time she was injured, the Seventh Circuit stated "… it is not overly burdensome to require a bar to protect its invitees if it *knows* that one patron is intending to attack another patron, even if the attack is to occur far from the bar." *Reynolds*, 623 F.3d at 1152 (emphasis added).

*Reynolds* is an aberrant decision and was incorrectly decided. Justice Ripple's dissent in *Reynolds* concluded that the majority's opinion "… expand[ed] drastically Illinois state law with respect to business invitor liability, and, therefore, exceed[ed]… [the Seventh Circuit's] interpretive authority under the Erie Doctrine." *Id*. at 1153-54.

No Illinois cases have followed the substantive ruling in *Reynolds* to extend business invitee status so far beyond the property line, and at least one case has criticized it. *Contini ex rel. Contini v. Green Dolphin, Inc.*, 2013 WL 4401035 (Ill. App. 1st Dist. 2013). In *Contini*, the First District refused to impose a duty on a bar where a patron was shot about a block away in relation to a dispute that started inside the bar. The Appellate Court recognized that Illinois case law has "…consistently declined to

17

find potential liability for a business owner based on a third party criminal attack more than a few feet off of the owner's business premises." *Id*. at *11.

Further, *Reynolds* reduces the no-affirmative-duty/special relationship rule to a mere matter of pleading for plaintiffs' attorneys. The lynchpin of the holding was plaintiff's allegation that the bar knew or should have known of the couple's intent to attack the plaintiff: "… [Plaintiff] sufficiently pled that CB Sports owed her a duty to protect her against the criminal attack by [the couple] if it *actually knew* of their alleged plan to sexually exploit her off premises." *Reynolds*, 623 F.3d at 1152 (emphasis added). But the Court also stated, "[Plaintiff] does not say how she knows that the bartender knew [of the couple's plans to attack the Plaintiff], but that is what discovery is designed to unearth." *Id*. at 1151. Functionally, this reduces the entire body of business invitee case law to little more than a pleading technicality, requiring only that the plaintiff plead that defendant "knew or should have known" of an impending attack, thereby automatically advancing the case to discovery. Considering the Illinois Supreme Court's in-depth discussion of the no-affirmative-duty rule and the "special relationship" exception in *Iseberg*, and reading Illinois case law as a whole, it is clear that Illinois courts intend this rule to act as a meaningful limit on the concept of duty, and *Reynolds* is incompatible with this intent.

Finally, it should not be surprising that Plaintiff failed to argue that *Reynolds* was applicable or even relevant in the District Court. The facts of *Reynolds* vary greatly from this case. Here, Plaintiff does not plead that Home Depot learned of any plan Cooper may have had to kill Alisha while the two were on Home Depot's premises.

18

Furthermore, Reynolds was only about a mile from the bar involved and had just left the bar's premises at the time of her accident. Here, Brian Cooper and Alisha Bromfield were hundreds of miles away from Home Depot on a day they were not working. Importantly, in *Reynolds*, the bartender allegedly *participated in* the couple's plan to attack the plaintiff because the bartender knew of a specific plan to attack and refused to give the plaintiff a phone book, which would have enabled the plaintiff to call a taxi, thereby avoiding riding with the couple.[1] There is no allegation that Home Depot participated in Cooper's attack on Alisha. *Reynolds* cannot be controlling or persuasive here.

> **B.    Home Depot had no duty to warn Alisha of the danger posed by Cooper pursuant to § 512 of the Restatement (Second) of Agency because the danger bore no relationship to her employment.**

Though Plaintiff provides no support or discussion, she cites § 512(1) of the *Restatement (Second) of Agency* for proposition that Home Depot should have taken measures to avert the danger to Alisha posed by Cooper. It is plain, however, from both the language of that section and the relevant case law that it is inapplicable to this case.

Under section 512(1), the imposition of a duty is contingent upon the servant "…acting within the scope of his employment." *Petersen v. U.S. Reduction Co.*, 267 Ill. App. 3d 775, 781 (1st Dist. 1994). In *Petersen*, the Illinois Appellate Court doubted the drafters intended the rule to apply where the accident had a tenuous relationship to the

---

[1] This is discussed in Justice Ripple's dissent, in which he states that the case should be evaluated under § 876 of the *Restatement (Second) of Torts*, and also as pleading an intentional tort against the bartender, and not negligence against the bar. See *Reynolds*, 623 F.3d at 1154-1155.

employment, and refused to recognize a duty of a trucking company to warn a driver of the danger of sniper fire. *Id*. This interpretation of § 512(1) is consistent with the body of Illinois duty to protect cases—imposing a hurdle for plaintiffs at the pleadings stage. Similarly, the danger Cooper allegedly posed to Alisha was not something inherent in (or even related to) the job they did. Thus, § 512(1) provides no basis for the finding of a duty under the facts of this case, as neither Cooper nor Alisha were within the scope of their employment.

### C.     Any argument under in-concert liability has been waived. Even if not waived, it fails because Home Depot is not alleged to have actively participated in Cooper's crime.

While Plaintiff does not cite to any in-concert liability case law, she appears to argue same, insisting that Cooper's use of a Home Depot telephone line enabled him to gain control over, and murder, Alisha. Home Depot addressed this in its motion to dismiss the Plaintiff's First Amended Complaint. (Dkt. 71, pp. 10-13). Plaintiff never substantively responded, and therefore she has waived the argument.

Even if not waived, Plaintiff cannot recover under this theory. While *Restatement (Second) of Torts* § 876 sets forth a duty wherein tort liability is extended to individuals who act in concert with the primary tortfeasor, it is not applicable to the facts here.[2]

---

[2] For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:

(a)     does a tortious act in concert with the other or pursuant to a common design with him, or

(b)     knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c)     gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Restatement (Second) of Torts* § 876 (1979).

"The mere common plan, design or even express agreement is not enough for liability in itself, and there must be acts of a tortious character in carrying it into execution. When both parties engage in the acts, each becomes subject to liability for the cars (sic) of the other." See comment *b*, *Restatement (Second) of Torts* § 876 (1979).

Plaintiff makes much of her allegation (upon information and belief) that Alisha was clocked in during the weekend that she was attending the wedding with Cooper, arguing the employers were "negligently complicit."(Appellant's Brief, p. 20-21). First, she was not clocked in. Plaintiff should know this since she would have received Alisha's final paycheck, which would not reflect payment for this time period. Home Depot understands that Grand has initiated (or intends to initiate) a Rule 11 challenge to that allegation. Second, even if she was, the fact does not produce liability under § 876—it is not alleged that Alisha was in fact working (regardless of whether she was clocked in), and it is not alleged that Home Depot or Grand engaged in any affirmative conduct contributing to Cooper's murder of Alisha.

Analyzing § 876, the Seventh Circuit refused to impose a duty of care upon a website that facilitated an illegal arms transfer, where the gun was later used to commit murder. *Vesely v. Armslist LLC*, 762 F.3d 661 (7th Cir. 2014). In *Vesely*, Smirnov purchased a gun advertised on Armslist.com by Ladera, a resident of Seattle. After purchasing the gun, Smirnov returned to Chicago and used the gun to kill a woman who spurned his sexual advances. The woman's brother filed suit against Armslist.com, alleging it had a duty to protect his sister, and argued that it created a dangerous condition by facilitating Smirnov's purchase of the gun.  He appealed the District

21

Court's decision dismissing his complaint pursuant to Rule 12(b)(6). The Seventh

Circuit affirmed the District Court's ruling. In discussing §876, it stated, "…simply

*enabling* consumers to use a legal service is far removed from encouraging them to

commit an illegal act." *Id*. at 666 (emphasis in original). Home Depot's connection to

Cooper's murder of Alisha is even more tenuous than the connection at issue in *Vesely*.

Plaintiff cannot plausibly argue that failing to terminate or demote an individual

equates to encouraging a murder.

**II.    Cooper's criminal attack upon Alisha was neither reasonably foreseeable, nor likely. Further, any duty imposed upon Home Depot in this case would have terrible consequences for the state of the law and Illinois businesses.**

In addition to showing one of the above-discussed exceptions applies, the

Plaintiff must show that the weight of the four duty factors dictate imposition of a duty.

The Court must consider: (1) the reasonable foreseeability of the injury, (2) the

likelihood of the injury, (3) the magnitude of the burden of guarding against the injury,

and (4) the consequences of placing that burden on the defendant. *Simpkins v. CSX*

*Transp., Inc.*, 2012 IL 110662 ¶ 18 (Ill. March 22, 2012). Because Plaintiff cannot show that

reasonable foreseeability or likelihood weigh in her favor, and because the

consequences of imposing a duty would be too great, she cannot show a duty existed at

the time of her murder.

**A.    The District Court correctly held that a reasonably prudent person would not be on notice of the *probability* of an attack under the circumstances alleged.**

The District Court correctly held that Cooper's murder of Alisha was not

reasonably foreseeable. Typically, a duty to protect against criminal attacks is

established by pleading that the defendant knew of other, similar attacks. "[A]bsent knowledge of previous incidents or special circumstances which would charge the owner with knowledge of the danger and the duty to anticipate it, the common law duty of reasonable care owed to a person … cannot be extended to a duty to guard against the criminal attacks of third persons." *Burks v. Madyun*, 105 Ill. App. 3d 917, 921 (1st Dist. 1982). Proceeding under the assumption that the alleged sexual harassment and inappropriate behavior actually occurred and that the Defendants were aware of said sexual harassment and inappropriate behavior, the District Court correctly held that those facts, without more, could not put Home Depot on notice of the probability of a criminal, murderous attack. (A-8, citing *Reynolds*, 623 F.3d at 1148). Furthermore, it is worth remembering that Alisha agreed to attend the wedding with Cooper. Regardless of Cooper's deplorable behavior, it is apparent that Alisha did not believe Cooper to be a danger, or she would not have agreed to attend the wedding with him, even if he did threaten her job.

In an attempt to circumvent the concept of reasonable foreseeability, Plaintiff unfortunately resorts to 1) mischaracterizing the nature of the District Court's holding, arguing that ruling was about whether the facts pled sufficiently inform the defendant of the claims against it (Appellant's Brief, p. 12-14); and 2) then incorrectly arguing that the District Court held Plaintiff to a higher pleading standard than Rule 8 requires (Appellants Brief, pp. 15-19). Nowhere in its opinion does the Court hold that Plaintiff failed to meet Rule 8's notice pleading requirements. The Amended Complaint's deficiency was not procedural in nature—it was substantive and legal.  Plaintiff's

allegations were not enough to show a duty was owed as a matter of law. See *Reynolds*, 623 F.3d at 1146. The Plaintiff's argument that the Court's order was the functional equivalent of holding the Plaintiff to a higher pleading standard is therefore misguided and incorrect. The District Court noted Plaintiff's failure to allege that Cooper had been physically violent toward Alisha or anyone else, and Plaintiff's failure to allege that Cooper had made threats against Alisha's life, simply because that is the normal way to establish reasonable foreseeability in a case involving a criminal attack by a third party. The lack of these allegations, therefore, is notable when Plaintiff is trying to establish that a third party attack was reasonably foreseeable before the attack occurred.

### 1.     The Plaintiff's attempt to re-label the issue as one of causation is transparent and illogical.

Plaintiff attempts to argue that the District Court inappropriately decided proximate causation by weighing "…the facts of whether the Employers should have known that Cooper's scheme to 'clock in' Alisha while she traveled with him put Alisha at risk." The argument is awkward and its logic is dubious, but it is obvious from the District Court's opinion that the Judge did nothing of the sort. Instead, the District Court simply found the allegation to be irrelevant (which it is) to the imposition of a duty, since the Plaintiff does not contend that Alisha was, in fact, working. (A-9).

### 2.     Plaintiff's general description of Cooper as "violent" and "threatening" do not make the crime reasonably foreseeable or likely.

Plaintiff apparently believes that by simply calling Cooper "violent" (which occurs in excess of 25 times in her brief) she can show that Defendants should have

known him to be violent. While this Court must accept well-plead facts as true, the same does not go for legal conclusions like Cooper's violent propensity or sexual deviancy. *Ashcroft*, 556 U.S. at 678. The Court must rely on well-plead facts to establish reasonable foreseeability, and the Plaintiff here fails to allege previous threats of violence or actual violence toward Alisha or anyone else.

Further, the idea that Cooper's alleged sexual deviancy would lead to the conclusion that a criminal attack was likely is misguided. Stories of sexual assault against others are not at issue in this case. Nor is sexual assault, per se. Plaintiff has sued for wrongful death. To recover, she must show why, under the circumstances of *her* case, Alisha's murder was likely, such that it should have been foreseen and protected against by the Defendants. While the allegations of sexual misconduct at work are disturbing, a reasonable person would not conclude that criminal attack and murder are likely to follow the sort of conduct alleged.

**B.     The consequences of imposing a duty on Home Depot in this case are too great to sustain that duty.**

Before a court imposes a duty of care, the court must consider the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Reynolds*, 623 F.3d at 1148, citing *Marshall v. Burger King*, 222 Ill. 2d 422, 436-37 (2006). To impose a duty upon Home Depot in this case is to obligate a business to defend a lawsuit arising from a murder occurring in a place entirely beyond its control, separated in both time and space (indeed, in another state) from the job that the Plaintiff alleges forms the basis of the duty.

For Illinois employers interested in avoiding wrongful death lawsuits, a duty of care such as Plaintiff urges here would mean termination or demotion for thousands of employees. These terminations and demotions would be justified, under Plaintiff's reasoning, because of the employee's usage of inappropriate language, or sexual misconduct—and done for the purposes of preventing the possibility of a future (hypothetical) murder. Of course, this is illogical and unworkable.

The economic and social ramifications of imposing a duty in this case are obviously unworkable for Illinois employers. To impose such a duty in this case suggests that an employer or business invitor must become involved in the social calendars of its employees and invitees and assess the risk of these social activities. All of this, of course, would depend upon the absurd premise that a business has the ability to control the social undertakings of its employees or invitees. It does not. Further, the imposition of a duty here blurs the lines of the concept, and creates confusion about what a business's responsibilities are. The District Court agreed and this Court should as well. (Dkt. 60, p. 13).

### III.     The District Court correctly held that Plaintiff failed to state a claim for negligent supervision.

Again relying on the mistaken idea that the nature of the District Court's ruling was that the Plaintiff failed to fulfill the specificity requirements of Rule 8, the Plaintiff argues that she can recover under a negligent supervision theory. The tort of negligent supervision cannot offer a viable route to recovery for the Plaintiff in this case because 1) the nature of Cooper's unfitness for his employment was not reasonably foreseeable

to Home Depot; and 2) Cooper wasn't under the control of Home Depot at the time he murdered Alisha.

An action for negligent hiring or retention of an employee requires the plaintiff to plead that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; and that this particular unfitness proximately caused the plaintiff's injury. *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998). "The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Van Horne v. Muller*, 185 Ill. 2d 299, 313 (1998).

To recover, Plaintiff must plead facts that demonstrate Home Depot knew or should have known that Cooper would violently attack Alisha while visiting with her socially. But, as discussed above, the Plaintiff fails to offer any allegations of prior violence or threats of violence from Cooper directed toward Alisha. In the face of this deficiency, it was not reasonably foreseeable to Home Depot (or Alisha) that Cooper would commit this heinous attack on a pregnant woman.

Second, Cooper was too far removed from Home Depot's control at the time he murdered Alisha to support a theory under a negligent supervision/negligent retention. In *Regions Bank v. Joyce Meyer Ministries, Inc.*, the Illinois Appellate Court recognized that, normally, when employers are liable for negligent hiring/retention claims for acts outside the scope of the employment, it is because the elements of § 317 of *Restatement (Second) of Torts* are met. 2014 IL App 130193 at ¶¶23-26 (5th Dist., Aug. 12, 2014). Section 317 imposes a duty on a master to prevent a servant from

intentionally harming others *if* the servant is on the master's premises and the master knows or has reason to know that he has the ability to control the servant.[3]

Plaintiff has waived any argument invoking § 317, because she did not argue its applicability in the trial court, while Home Depot thoroughly addressed same. (See, Dkt. 18, pp. 5, 11; Dkt. 41, pp. 6-7; Dkt. 71, p. 10; Dkt. 75, pp. 8-9). Further, § 317 is inapplicable. Neither Cooper nor Alisha were on Home Depot's premises at the time of the murder. Cooper is not alleged to have used any chattels entrusted to him to kill Alisha. Plainly, Home Depot did not have the ability to control Cooper at the time of the murder. The required elements of that exception are absent from the facts alleged in the Plaintiff's Amended Complaint. Therefore, no duty may be imposed under Section 317.

## IV. The District Court correctly enjoined the Plaintiff from taking discovery at the pleadings stage of this lawsuit.

Though it's almost imperceptible, the Plaintiff seems to complain about the District Court's failure to allow Plaintiff discovery during the pendency of the motions to dismiss. (See Appellant's Brief, pp. 3-4, 12, 18). Discovery rulings are reviewed under an abuse of discretion standard, and will not be overturned absent a finding the judge's ruling lacks a basis in law or fact or clearly appears to be arbitrary. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016), *cert. denied*, (U.S. Oct. 31, 2016).

Here, during the course of a scheduling hearing for the Defendants' motions to dismiss the Plaintiff's Amended Complaint, with no notice to the Defendants, counsel

---

[3] "[T]he master … is under no peculiar duty to control the conduct of his servant while he is outside of the master's premises, unless the servant is at the time using a chattel entrusted to him as servant." *Restatement (Second) of Torts* § 317 (1965), comment *b*.

for Plaintiff requested to take discovery. Recognizing that the motions were legal in nature and not factual, the District Court correctly held that discovery would continue to be stayed. (Dkt. 72, Aug. 6, 2015 Transcript). The Plaintiff failed to challenge that ruling during the underlying proceedings, or present any support for their request in writing. If the Plaintiff attempts to resurrect this issue in her Reply Brief, this Court should hold that the District Court did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, Home Depot respectfully requests that this Court affirm the District Court's dismissal (Dkt. 79) of the Plaintiff's Amended Complaint, and its dismissal of the lawsuit with prejudice (Dkt. 84, 85).

Respectfully submitted,

s/ Benjamin J. Galloway

Benjamin J. Galloway
ARDC No. 6281433
McVey & Parsky, LLC
30 N. LaSalle St., Suite 2100
Chicago, IL 60602
Phone: (312) 551-2130
Fax: (312) 551-2131
Email: bjg@mcveyparsky-law.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing Brief of Defendant-Appellee, Home Depot U.S.A., Inc., complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 8,124 words, excluding that part of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), Circuit Rule 32(b) and Fed. Ru. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12 point Book Antiqua font in the body, and 11 point Book Antiqua font in the footnotes.

s/Benjamin J. Galloway
_____
Benjamin J. Galloway

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2016, the Brief of Defendant-Appellee, Home Depot U.S.A., Inc. was filed with the Clerk of the Circuit Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system.

The following participants are registered users of, and will be served by, the appellate CM/ECF system:

Jason Michael Metnick
Meltzer Purtill & Stelle LLC
300 South Wacker Drive
Suite 2300
Chicago, IL 60606
Phone: 312-987-9900
Fax: 312-987-9854
Email: jmetnick@mpslaw.com
Counsel for Plaintiff-Appellant

Scott Berends
C. William Busse , Jr.
Busse, Busse & Grasse, P.C.
20 North Wacker Drive
Suite 1363
Chicago, IL 60606
Email: cwbusse@bussepc.com
Counsel for Defendants-Appellees
Grand Service LLC and Grand Flower
Growers, Inc.


s/ Benjamin J. Galloway
Benjamin J. Galloway

31